# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**ARTIS SCARBOROUGH,**

    Plaintiff,

vs.                                                         Case No. 4:06cv152-RH/WCS

**BERNARD COHEN, Florida
Department of Corrections,
Chief of the Bureau of Programs,**

    Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

    Plaintiff, an inmate proceeding *pro se* and *in forma pauperis*, filed a civil rights complaint under 42 U.S.C. § 1983.  Doc. 1.  Plaintiff seeks injunctive relief through this case and requests an order granting permission to marry his girlfriend.  Plaintiff alleges that Defendant Cohen denied his request to marry on December 5, 2005.  Doc. 1, p. 7.  Plaintiff further seeks monetary damages for Defendant Cohen's violation of his due process rights "by denying Plaintiff's request to be married . . . ."  *Id.*, at 10.

---

[1] **The parties are given notice** that the time for filing objections has been shortened to fourteen days, and objections must be filed on or before **March 21, 2007**.  Replies to objections must be filed seven days later, on or before **March 28, 2007**.  The district judge will rule upon this report and recommendation and any objections on or after **March 29, 2007**.

Defendant responded by filing a motion to dismiss, doc. 12, asserting that Plaintiff did not exhaust administrative remedies in this case. Attached to this motion to dismiss were a number of grievances filed by Plaintiff relating to this claim.

Plaintiff filed a response to the motion to dismiss, doc. 16, and simultaneously filed a motion for sanctions, doc. 17. Shortly thereafter Plaintiff submitted a request for judicial notice, doc. 18. That request includes copies of several administrative rules of the Department of Corrections which pertain to the merits of his claim.

**Procedural status of the motion to dismiss**

When this motion to dismiss was filed, a failure to exhaust administrative remedies was treated as a failure to state a claim upon which relief may be granted. Rivera v. Allin, 144 F.3d 719, 731 (11th Cir. 1998) ("A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted."). Thus, this court has routinely considered this issue on motions to dismiss. Indeed, the issue has also been considered by this Court *sua sponte*.

On January 22, 2007, the Supreme Court held in Jones v. Bock, 127 S.Ct. 910 (2007) that a failure to exhaust the prison grievance procedure in a prisoner § 1983 action is an affirmative defense. This affirmative defense is not one of the seven affirmative defenses that may be presented by a motion pursuant to FED. R. CIV. P. 12(b). The affirmative defense in this case does not clearly appear on the face of the complaint or in the attachments to the complaint, and the attachments to Defendant's motion to dismiss must be considered. Accordingly, the defense may be considered only by an answer or a motion for summary judgment. Faggins v. Flemmings, No. 05-

4887 (JBS), 2007 WL 432777, * 1 n.1 (D. N.J., Feb. 5, 2007); Ray v. Jones, No. 06-319-C, 2007 WL 397084 (W.D. Okla., Feb. 1, 2007).  Consequently, an order was entered converting this motion to dismiss to a motion for summary judgment.  Doc. 27.

In response to my last order, Plaintiff filed a memorandum and additional evidence.  Doc. 29.  Defendant did not file anything further. The motion for summary judgment is ready for ruling.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendant initially has the burden to demonstrate an absence of evidence to support the nonmoving party's case.  Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986).  If he does so, the burden shifts to the Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial.  Id.  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and a "scintilla" of evidence is insufficient.  There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof.  Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).  An issue of fact is "material" if it could affect the outcome of the case.  Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  However, "the evidence and inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party, and all reasonable doubts are resolved in his favor."  WSB-TV v. Lee, 842 F.2d 1266, 1270 (11th Cir. 1988); Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999) ("We

are required to resolve all reasonable inferences and facts in a light most favorable to the nonmoving party.").

**Plaintiff's grievance history**

The evidence of Plaintiff's grievance history is not disputed. The grievance history is convoluted because it not only concerns Plaintiff's attempts to obtain a written copy of the decision to deny his request to marry, but also Plaintiff's efforts to overturn the decision to deny the marriage request.

Plaintiff submitted an inmate request to the assistant warden at Sumter Correctional Institution (Mr. Atmore) on December 5, 2005, seeking a written response to his request to marry Ms. Benniefield. Doc. 12, p. 5; ex. B, p. 4 (doc. 12-3, p. 5 on the electronic docket[2]). A response was provided to Plaintiff by Atmore on December 6, 2005, advising Plaintiff that the Warden had decided to not permit the marriage at that time. *Id.* The assistant warden suggested Plaintiff wait six to twelve months and resubmit another request. *Id.*

On the following day, December 7, 2005, Plaintiff submitted an appeal to the warden contesting "the decision by Mr. J. Atmore on denying [his] request to get married." Doc. 12, ex. B, p. 5 (doc. 12-3, p. 6). Plaintiff again sought approval of his marriage request. *Id.* The December 9th response, signed by the Assistant Warden Atmore stated that the request for administrative remedy or appeal was being returned to Plaintiff for "non-compliance." *Id.*, at 6 (doc. 12-3, p. 7). Specifically, Plaintiff was told that Rule 33-103.006(2)(h) required a copy of the informal grievance and response

---

[2] Hereafter citations to documents with a hyphen are to the image of the same paper document on the electronic docket. A citation to the paper document precedes this citation.

be attached to the grievance appeal. *Id.* The response stated that Plaintiff's "formal grievance did not have an informal grievance attached as required by rule." *Id.* Plaintiff was directed to "first submit an appropriate and complete informal grievance specifying the grievable issue and relief sought . . . ." *Id.* In other words, Plaintiff was supposed to have first filed an informal grievance before filing this formal grievance to the Warden.

On December 12, 2005, Plaintiff submitted an informal grievance to Assistant Warden Atmore in which he complained that the prior response, dated December 9, 2005, stated Plaintiff's "grievance was not in compliance with 33-103.006(2)(h) of FAC." Doc. 12, ex. B, p. 7 (doc. 12-3, p. 8). Plaintiff noted that rule required him to submit an informal grievance to the party responsible, and Plaintiff asserted that he had done that since he asserted that Atmore denied his request to marry. *Id.* Plaintiff argued that when he "attempted to formally grieve [the Assistant Warden's] decision to the warden on 12/7/05, somehow it reached your office and you dismissed it as not being in compliance . . . ." *Id.* Plaintiff then went on to complain about the Assistant Warden's denial of Plaintiff's request to marry. *Id.* Plaintiff concluded his informal grievance with the following:

> While I have submitted a formal grievance to the warden in regards to your decision, I've elected to resubmit this informal grievance to break this quagmire that has developed. For purpose of exhausting my administrative obligations, I am now requesting that you [Atmore] reverse your position and grant me my constitutional right to marry in accordance with the policy that has allowed other inmates here to be married.

*Id.*, at 8 (doc. 12-3, p. 9). Plaintiff's informal grievance was denied on December 13, 2005, and the response stated that Plaintiff's prior formal grievance "was returned

because [Plaintiff] attached an inmate *request*." *Id*, at 7 (doc. 12-3, p. 8) (emphasis added). An inmate request form is not the same as an informal grievance.

On December 14, 2005, Plaintiff submitted an appeal to the Secretary stating that after being "verbally counselled by Mr. Atmore," the Assistant Warden, concerning Plaintiff's request to marry, Mr. Atmore told Plaintiff he would confer with the Warden and give Plaintiff a written response. Doc. 12, ex. B, p. 1 (doc. 12-3, p. 2). Plaintiff states that after a week passed, he "sent a request to Mr. Atmore reminding him that" Plaintiff had not yet received a response. *Id.* Plaintiff acknowledges that on December 6, 2005, Mr. Atmore responded to his inquiry, and denied his request for marriage. *Id.* Plaintiff then states that he sent a formal grievance to the warden, which Mr. Atmore interceded to respond and deny by stating it was not in compliance. Plaintiff states that he then "rewrote an informal grievance to Mr. Atmore, contesting his decision on constitutional grounds" to not permit Plaintiff to marry. *Id.*, at 3 (doc. 12-3, p. 4). Plaintiff states that "Mr. Atmore did not address the issues but denied the request by reciting Appendix. C." *Id.* Plaintiff argued in closing that "Mr. Atmore's decision to deny [Plaintiff's] request [to marry] is not authorized by" the administrative rules and violates his constitutional right to be married. *Id.* Defendant states that attached to Plaintiff's appeal was "the formal grievance that was returned for non-compliance." Doc. 12, p. 6.

Plaintiff received a response to this grievance appeal at the Secretary's level on or about December 30, 2005, which stated that his administrative appeal was "in non-compliance with Chapter 33-103, Inmate Grievance Procedure, because [his] grievance at the institutional level was determined to be in non-compliance with the requirements of the rule resulting in [his] appeal . . . being in non-compliance." Doc. 12, ex. B, p. 2

(doc. 12-3, p. 3). The response stated that the appeal was "being returned without action" and *directed Plaintiff to "file an informal grievance and re-file your formal [grievance] at the institution prior to filing" at the Central office level*. *Id.*, emphasis added.

Plaintiff filed a second grievance appeal to the Secretary's office on December 19, 2005, obviously prior to having received the December 30th appeal response. Doc. 12, ex. C, p. 1 (doc. 12-3, p. 11). Plaintiff stated that, "Based on the attachment, I am challenging Mr. Atmore's abuse of discretion to not allow [Plaintiff] to have a written copy of the denial to marry." *Id.* Plaintiff claimed that Mr. Atmore's decision violated the administrative rules, denied him access to court, and "eviscerates the written notice requirement (parties) that my fiancé be informed." *Id.* Plaintiff requested that he and his fiancé be provided copies of the written decision." *Id.* The Secretary's Office returned Plaintiff's grievance "without action" on December 28, 2005, for being in "noncompliance with Chapter 33-103.006" because Plaintiff "did not provide this office with a copy of the formal grievance filed at the institutional level as required by rule, or the reason you provided for by-passing that level of the grievance procedure is not acceptable." *Id.*, at 2 (doc. 12-3, p. 12). The last page of this exhibit, which is presumably the "attachment" referred to by Plaintiff in the above grievance appeal, contains an "informal grievance" addressed to Mr. Atmore requesting the identify of the "designated representative" who denied Plaintiff's request fo marriage and asking to be "provided a written copy of the decision as the FAC so directs." *Id.*, at 3 (doc. 12-3, p. 13).

Case No. 4:06cv152-RH/WCS

On this same day, December 19th, Plaintiff sent another appeal to the Secretary's Office, again attaching an informal grievance to his appeal, claiming Mr. Atmore usurped a grievance, requesting denial of his request to marry in writing, and asking that his fiancé be served written notice as well.  Doc. 12, ex. D, pp. 1-3 (doc. 12-4, pp. 2-4).  This appeal was similarly "returned without action" because Plaintiff bypassed the formal grievance step of the administrative process.  *Id.*, at 2 (doc. 12-4, p. 3).

A third appeal was sent to the Secretary's Office, also on December 19th, complaining that the Chaplain and Mr. Atmore refuse to provide Plaintiff "with a written copy of the denial of [his] request to marry."  Doc. 12, ex. E, p. 1-3 (doc. 12-4, pp. 6-8).  Plaintiff also argued his "constitutional right to marry."  *Id.*, at 1 (doc. 12-4, p. 6).  The appeal was, likewise, "returned without action" because Plaintiff bypassed the formal grievance step of the administrative process.  *Id.*, at 2 (doc. 12-4, p. 7).

In response to my last order, Plaintiff submitted additional grievances.  On January 11, 2006, he appealed to the Secretary, once again asking that he be provided copies of the documents in the chaplain file denying his request to marry.  Doc. 29, Ex. A (doc. 29, p. 6).   The agent for the Secretary replied that Plaintiff's grievance was referred to the Warden to consider, and advised Plaintiff that if he did not think the response adequately resolved the issue, he could appeal again in within 15 days.  *Id.* (doc. 29, p. 7).

Three days earlier, on January 8, 2006, Plaintiff had filed a grievance with the Warden.  *Id.* (doc. 29, p. 9).  He again asked for the documents denying his request to marry.  The response said:

Case No. 4:06cv152-RH/WCS

> You were advised that your request for marriage was denied due to the criminal history of Ms. Benniefield. This information is confidential and will not be disclosed. In addition, the response that you received to your informal grievance is correct in that you have not demonstrated an exceptional need for information contained in the department's records as specified in F.S. 945.10(3)(a-f).

*Id.* (doc. 29, p. 11). Attached to that formal grievance was a copy of the informal grievance which had been submitted on December 15, 2005. *Id.* (doc. 29, p. 12).

The rest of the grievances submitted with document 29, likewise, only complain about the refusal to provide Plaintiff with copies of the documents denying his request to marry. Doc. 29, Ex. A (doc. 29, pp. 13-15).

This case was initiated on April 4, 2006. Doc. 6. After filing the complaint, on April 6, 2006, Plaintiff submitted another grievance appeal to the Secretary. Doc. 12, ex. F, p. 1-3 (doc. 12-4, pp. 10-12). That appeal was also "returned without action" because Plaintiff either bypassed the formal grievance step of the administrative process or failed to provide a copy of the formal grievance. *Id.*, at 2 (doc. 12-4, p. 11). Attached to that appeal was an informal grievance to the Chaplain, dated March 30, 2006, asking "why Mr. Cohen denied [his] marriage request on 12-5-01." *Id.*, at 4 (doc. 12-4, p. 13).

**Legal analysis**

Plaintiff is incarcerated within the Florida Department of Corrections (DOC). Florida prisons have an administrative grievance program. *See* FLA. ADMIN. CODE CHAPTER 33-103. Doc. 12, ex. A. Pursuant to 42 U.S.C. § 1997e(a), Plaintiff must exhaust available administrative remedies prior to filing this cause of action. Failure to

exhaust the prison grievance procedure in a prisoner § 1983 action is an affirmative defense.  Jones v. Bock, 127 S.Ct. 910 (2007).

In the three-step grievance process, inmates are required first to file an informal grievance.  FLA. ADMIN. CODE R. 33-103.005(1).  The only exception for bypassing this step is "in the case of an emergency grievance, a grievance of reprisal, a grievance of a sensitive nature, a grievance alleging violation of the Americans with Disabilities Act, a medical grievance, a grievance involving admissible reading material, a grievance involving gain time . . . , a grievance challenging placement in close management and subsequent reviews, grievances regarding the return of incoming mail . . . , or a grievance involving disciplinary action . . . ."  Id. (doc. 12-2, p. 5).  Plaintiff was required to file an informal grievance with respect to the merits of the decision to not allow him to marry because his claim was not among the exceptions.

The rules specifically provide that "asking questions or seeking information" is not the same as filing an informal grievance.  Id. (doc. 12-2, p. 6).  An informal grievance is submitted on an Inmate Request form, DC6-236, but the inmate must "print the words 'Informal Grievance' " on the top of the page and "check the appropriate box indicating to whom he is submitting the informal grievance."  Id. (doc. 12-2, pp. 5-6).

The next step in the grievance process is to file a formal grievance.  FLA. ADMIN. CODE R. 33-103.006.  The inmate must "attach a copy of the informal grievance and the response to the informal grievance" to his formal grievance.  FLA. ADMIN. CODE R. 33-103.006(1)(h); doc. 12-2, p. 7.

If the inmate "still feels that the grievance has not been satisfactorily resolved during the formal grievance procedure," the third and final step is to file an appeal to the

Office of the Secretary. FLA. ADMIN. CODE R. 33-103.007; doc. 12-2, p. 8. Appeals to the Office of the Secretary must have a copy of his formal grievance and response attached, as well as a copy of the informal grievance and response. FLA. ADMIN. CODE R. 33-103.007(3); doc. 12-2, p. 9.

Plaintiff argues that the Florida Administrative Code sets forth procedures which must be followed when an inmate seeks permission to marry. Doc. 16, p. 2. Plaintiff asserts that the warden or an assistant warden are not authorized to deny a marriage request. *Id.*, at 2. Plaintiff confuses the procedures for obtaining permission to marry with the grievance procedures. The issue here is exhaustion of administrative remedies and that issue only concerns the grievance procedures.

Plaintiff's second argument that he had "no duty to initiate any grievance (informal or formal) at the institutional level" is incorrect. As noted above, Plaintiff is required by the administrative rules to submit this kind of claim through all three steps of the grievance process. Plaintiff had to file an informal grievance, and then a formal grievance, and then a grievance appeal. It is only after these steps in the process, and after the Department has had a reasonable opportunity to correct an alleged wrong, that a prisoner complaint is properly before this Court.

Plaintiff's third argument is that even if Defendant is correct that Plaintiff did not exhaust because he failed to submit a formal grievance on December 13, 2005, Plaintiff claims the grievances were all moot since they were predated by the Central Office memorandum issued on December 2, 2005, denying the marriage request. Doc. 16, p. 4. That argument is incorrect and again confuses the procedures for seeking permission to marry with the grievance procedures. Once Plaintiff was orally advised

that his marriage request was denied, Plaintiff had an obligation to initiate the grievance process to obtain a reversal of that decision. It did not matter that he did not have a written copy of the decision or that he did not know why his request to marry was denied. The negative decision was made and he knew it.

Plaintiff submitted an informal request on December 5, 2005. When that was denied on December 6th, Plaintiff should have filed an informal grievance. Instead, he filed a formal grievance, which was denied for being in noncompliance. Plaintiff then properly submitted an informal grievance on December 12, 2005. When that grievance was denied on December 13th, Plaintiff should have filed a formal grievance. Instead, Plaintiff bypassed that stage and attempted to file an appeal with the Office of the Secretary. Plaintiff has not remedied that failure. Thus, Plaintiff did not exhaust administrative remedies prior to filing this case. Summary judgment should be entered in favor of Defendant Cohen.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's motion to dismiss, doc. 12, now deemed to be a motion for summary judgment, be **GRANTED**, and Plaintiff's complaint, doc. 1, be **DISMISSED** for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997(e), that Plaintiff's motion for sanctions, doc. 17, be **DENIED**, and that the order adopting this report and

recommendation direct the Clerk of Court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**IN CHAMBERS** at Tallahassee, Florida, on March 7, 2007.

      s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations on or before <u>March 21, 2007</u>. A party may respond to another party's objections on or before <u>March 28, 2007</u>. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations. The district judge will rule upon this report and recommendation and any objections on or before <u>March 29, 2007</u>.**